**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

DAN SUN,

        Plaintiff,

    v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, *et al.*,

        Defendants.

Civil Action No. 21-1612 (CKK)

---

**MEMORANDUM OPINION**
(March 28, 2025)

Plaintiff Dan Sun, a citizen of the People's Republic of China, filed this action against U.S. Citizenship and Immigration Services ("USCIS") and several federal officials, alleging that they unlawfully denied her the opportunity to immigrate to the United States as an immigrant investor pursuant to 8 U.S.C. § 1153(b)(5), more commonly known as the "EB-5" visa program. Compl., ECF No. 1, ¶ 1. Plaintiff Sun and the Defendants have filed cross-motions for summary judgment, and each opposes the other's motion.[1] Upon consideration of the parties' submissions,[2] the

---

[1] *See* Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 11; Defs.' Mot. for Summ. J. ("Defs.' Mot."), ECF No. 10; Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n"), ECF No. 12; Defs.' Opp'n to Pl.'s Mot. for Summ. J. ("Defs.' Opp'n"), ECF No. 13.

[2] The Court's consideration has focused on the following documents, including the exhibits and attachments thereto:
- the Plaintiff's Complaint, ECF No. 1;
- the Defendants' Motion for Summary Judgment, ECF No. 10;
- the Plaintiff's Opposition to the Defendants' Motion, ECF No. 12;
- the Defendants' Reply in support of their Motion, ECF No. 16;
- the Plaintiff's Motion for Summary Judgment, ECF No. 11;
- the Defendants' Opposition to the Defendants' Motion, ECF No. 13;
- the Plaintiff's Reply in support of her Motion, ECF No. 17;
- the Joint Appendix, ECF No. 18;
- the Defendants' Notice of Supplemental Authority, ECF No. 19;
- the Plaintiff's Response to the Defendants' Notice, ECF No. 20;
- the Joint Status Report dated October 11, 2024, ECF No. 22;
- the Plaintiff's First Notice of Supplemental Authority, ECF No. 23;
- the Defendants' Response to the Plaintiff's First Notice of Supplemental Authority, ECF No. 24; and
- the Plaintiff's Second Notice of Supplemental Authority, ECF No. 26.

relevant legal authority, and the entire record, the Court shall **GRANT** the Plaintiff's [11] Motion,

**DENY** the Defendants' [10] Motion, and **REMAND** this matter to USCIS for further proceedings.

## I. BACKGROUND

### A.    Statutory and Regulatory Framework

Congress amended the Immigration and Nationality Act ("INA") in 1990 to create a new category of "employment creation" visas for prospective immigrants to the United States who invest in qualifying "new commercial enterprise[s]" in the United States.  *See* Immigration Act of 1990, Pub. L. No. 101–649, § 121(a), 104 Stat. 4978, 4987–90 (codified in relevant part at 8 U.S.C. § 1153(b)(5)).   These "employment creation" visas are the fifth-preference category among "employment-based" visas available under the INA, and they are commonly known as "EB-5" visas.  *See Huashan Zhang v. USCIS*, 978 F.3d 1314, 1316 (D.C. Cir. 2020).

To qualify for an EB-5 visa, an applicant must have "invested" or be "actively in the process of investing" a specified amount of "capital" in a "new commercial enterprise" that "will benefit the United States economy by creating full-time employment for" at least ten U.S. citizens or other qualifying U.S. workers.  8 U.S.C. § 1153(b)(5)(A).   One way of satisfying this requirement is to make an investment in a USCIS-approved "regional center" that indirectly creates at least ten qualifying jobs.[3]  *See* 8 U.S.C. § 1153(b)(5)(E) (2022); *see also* Departments of Commerce, Justice, and State, the Judiciary and Related Agencies Appropriations Act of 1993,

---

In an exercise of its discretion, the Court concludes that holding oral argument on the pending Motion is not necessary to the resolution of the issues before the Court.  *See* LCvR 7(f).

[3] The Congressional authorization for the "regional center" program lapsed on June 30, 2021, but it was later reinstated, with modifications, effective March 15, 2022.  *See* Consolidated Appropriations Act of 2021, Pub. L. No. 116–260, Div. O., 134 Stat. 1182, 2148 (2020) (authorizing program through June 30, 2021); Consolidated Appropriations Act of 2022, Pub. L. No. 117–103, Div. BB, § 103, 136 Stat. 49, 1075–78 (2022) (modifying and reauthorizing program effective March 15, 2022); *see also Bromfman v. USCIS*, No. 21-cv-571, 2021 WL 5014436, at *2 (D.D.C. Oct. 28, 2021) (BAH) (noting lapse as of June 30, 2021).  One provision of the reauthorizing statute allows USCIS to resume processing of petitions filed under the previously expired version of the program.  *See* Consolidated Appropriations Act of 2022, Pub. L. No. 117–103, Div. BB, § 105(c), 136 Stat. 49, 1103 (2022).

Pub. L. No. 102–395, § 610(a), 106 Stat. 1828, 1874 (Oct. 6, 1992) (authorizing the prior version of the "regional center" program); 8 C.F.R. § 204.6(m) (providing implementing regulations for the prior version of the program).

At the time of the application at issue in this case, the required investment of "capital" was $500,000 if the qualifying investment was made in a "targeted employment area" and $1,000,000 otherwise.[4]  *See* 8 U.S.C. § 1153(b)(5)(C) (2016); 8 C.F.R. § 204.6(f) (2016).  A "targeted employment area" is one that, when the investment is made, is rural or has experienced high unemployment.  8 U.S.C. § 1153(b)(5)(D)(viii); 8 C.F.R. § 204.6(e).  Finally, and of central importance in this case, "capital" includes "cash" and many other kinds of assets owned by the person seeking a visa, but it does not include any "assets directly or indirectly acquired by unlawful means."  8 U.S.C. § 1153(b)(5)(D)(ii); *see also* 8 C.F.R. § 204.6(e) ("Assets acquired, directly or indirectly, by unlawful means (such as criminal activities) shall not be considered capital . . . .").

Soon after Congress created the EB-5 program, the Immigration and Naturalization Service ("INS")—the predecessor to U.S. Citizenship and Immigration Services ("USCIS")—enacted implementing regulations setting procedures for prospective immigrants to apply for classification under EB-5.  *See* Employment-Based Immigrants, 56 Fed. Reg. 60897, 60910–13 (Nov. 29, 1991) (codified in relevant part at 8 C.F.R. § 204.6).  Under these regulations, an investor seeking an EB-5 visa must file an I-526 petition that includes evidence showing that the petitioner meets each of the requirements for the visa.  *See id.* at 60910, 60911–12; 8 C.F.R. § 204.6(a), (j).

These regulations require an applicant to provide "[e]vidence identifying any other source(s) of capital."  8 C.F.R. § 204.6(j)(3)(iii).  The applicant must also provide "[f]oreign business registration records," "tax returns of any kind filed within five years," and certified copies

---

[4] Today, the relevant amounts are $800,000 for targeted employment areas and $1,050,000 in other areas.  *See* Consolidated Appropriations Act of 2022, Pub. L. No. 117–103, Div. BB, § 102, 136 Stat. 49, 1070–75 (2022).

of judgments or evidence of pending proceedings against the petitioner  *Id.* § 204.6(j)(3)(i)–(ii). The regulation requires this evidence as proof that "the petitioner has invested, or is actively in the process of investing, capital obtained through lawful means."  *Id.* § 204.6(j)(3).  The INS's statement accompanying the final regulations explains that the requirement for evidence identifying the applicant's sources of capital was intended to "carr[y] out Congress's instruction that 'processing of an individual visa not continue under this section if it becomes known to the Government that the money invested was obtained by the alien through other than legal means (such as money received through the sale of illegal drugs).'"  56 Fed. Reg. 60897, 60904 (Nov. 29, 1991) (quoting S. Rep. No. 101–55, at 21 (1989)).

Separately, the regulations provide that the "new commercial enterprise" in which an EB-5 petitioner is investing may have "several owners . . . provided that the source(s) of all capital invested is identified and all invested capital has been derived by lawful means."  8 C.F.R. § 204.6(g)(1).

A petitioner seeking an EB-5 visa bears the burden of proof to show her eligibility for the visa.  *See* 8 U.S.C. § 1361; 8 C.F.R. § 103.2(b)(1).  The petitioner must carry this burden by a preponderance of the evidence.  *Matter of Chawathe*, 25 I. & N. Dec. 369, 375 (AAO 2010).[5]  To do so, the petitioner must introduce some supporting evidence: "'simply going on record without supporting documentary evidence is not sufficient for purposes of meeting the burden of proof' in EB-5 proceedings."  *Mo v. USCIS*, 719 F. Supp. 3d 21, 29 (D.D.C. 2024) (JEB) (quoting *Matter of Ho*, 22 I. & N. Dec. 206, 211 (BIA Assoc. Comm'r 1998)).

---

[5] Some decisions of the Department of Homeland Security (DHS) Administrative Appeals Office (AAO) are precedential and binding on DHS officers and employees and on immigration judges in future proceedings.  *See* 8 C.F.R. § 1003.1(g), (i).  The Administrative Appeals Office's decision in *Matter of Chawathe* was designated as precedent on October 20, 2010.  *See* 25 I. & N. Dec. at 369 n.1.  Each of the administrative decisions cited in this Memorandum Opinion have received the same designation.

In a series of precedential decisions, the Department of Homeland Security (DHS) has interpreted these requirements to mean that a petitioner seeking an EB-5 visa must introduce documentary evidence tracing the sources of the funds the petitioner is investing in a qualifying U.S. enterprise. *See Matter of Izummi*, 22 I. & N. Dec. 169, 195 (BIA Assoc. Comm'r 1998) (denying petition in part because the petitioner had "not documented the path of the funds" invested and therefore had "failed to meet his burden of establishing that the initial [sums invested] were his own funds"); *see also Matter of Soffici*, 22 I. & N. Dec. 158, 164 (BIA Assoc. Comm'r 1998) (denying petition in part because the "source of the funds . . . [had] not been adequately documented" where the petitioner had not introduced evidence of the sale of a house and a business that he asserted were the source of his funds); *Matter of Ho*, 22 I & N. Dec. 206, 210–11, 214 (BIA Assoc. Comm'r 1998) (denying petition in part because the petitioner had "failed to clarify the source of his funds" where the petitioner had not identified the bank accounts from which the transfer initiated and had not introduced documentary evidence that he had sufficient assets to fund such a transfer).

### B.    Facts and Proceedings

Plaintiff Dan Sun is a citizen of the People's Republic of China. *See* Joint App'x ("J.A."), ECF No. 18, at 6. She filed an I-526 petition for an EB-5 visa in December 2016, stating that she had invested at least $500,000 in a new commercial enterprise in Oakland, California to help fund the construction and development of a new real estate project. *Id.* at 1–6; *see also id.* at 22–68 (business plan). This project was associated with a USCIS-approved "regional center" called Golden Gate Global. *Id.* at 10.

According to the exhibits that Ms. Sun attached to her petition, she obtained the funds that she used for her investment by selling real property that she owned in Shenzhen, China, which she had purchased ten years earlier with income from her employment. *See* J.A. at 20, 147. The

proceeds of this sale were denominated in renminbi, the official currency of the People's Republic of China. *See id.* at 20. Ms. Sun then exchanged the renminbi proceeds of the sale for U.S. dollars by sending the proceeds to an intermediary in Hong Kong, Wing Hung Pong, who then sent $550,000 in U.S. dollars to one of Ms. Sun's accounts in Hong Kong. *Id.* at 21. Finally, Ms. Sun sent these U.S. dollars from her account to the new commercial enterprise in Oakland. *Id.*

After reviewing Ms. Sun's petition, USCIS asked her to provide additional supporting evidence. J.A. at 222. USCIS's request for evidence ("RFE") noted that Ms. Sun's investment had passed through an intermediary, Ms. Pong, who had exchanged Ms. Sun's renminbi for U.S. dollars. *Id.* at 229–30. Citing the requirement that an EB-5 visa petitioner must show that the capital she is investing was lawfully obtained, the RFE requested evidence showing that Ms. Pong had obtained her U.S. dollars through lawful means. *Id.* The USCIS also noted that the record before it was "silent as to whether" the kind of "currency swap" that Ms. Pong performed for Ms. Sun "is lawful under Chinese law in mainland China (e.g., such as the rules of the State Administration of Foreign Exchange)." *Id.* at 230.

Ms. Sun responded to USCIS's RFE by providing further details about Ms. Pong's role in the exchange and Ms. Pong's source of U.S. dollars. *See* J.A. at 235, 237. Ms. Sun provided a statement signed by Ms. Pong, in which she explained that she had sold real property in 2013 and used the proceeds of that sale to buy U.S. dollars, some of which she later transferred to Ms. Sun in exchange for renminbi. J.A. at 240. Ms. Pong further explained that she had not preserved documents showing the proceeds of the real estate sale or her purchase of U.S. dollars because so much time had passed since those transactions. *Id.* However, she did provide a contract for the real property sale in 2013, which Ms. Sun provided to USCIS. *See id.* at 240, 247–58. Ms. Sun also provided records from Ms. Pong's bank showing U.S. dollar-denominated account balances

ranging from $754,854 in May 2016, down to $489,059 in September 2016, and up to $2,181,846 in December 2016.  *See* J.A. at 273 (May 2016), 285 (Sept. 2016), 294 (Dec. 2016).  Ms. Sun did not provide any documentation showing that Ms. Pong was licensed or registered as a third-party currency exchanger in Hong Kong.  *See* J.A. at 303.

USCIS then denied Ms. Sun's EB-5 petition.  J.A. at 298.  The agency explained that it was denying the petition because Ms. Sun had not provided sufficient evidence that the U.S. dollars that Ms. Sun had received from Ms. Pong were obtained through lawful means.  J.A. at 302–07. The agency summarized its conclusion as follows:

> Because Petitioner's funds were routed through a third party exchanger, Petitioner bears the burden of demonstrating that the funds transferred by the third party to the [new commercial enterprise] were obtained through lawful means.  The evidence provided is insufficient to demonstrate that the funds invested . . . were lawfully derived, because Petitioner has failed to demonstrate by a preponderance of evidence that Exchanger's funds in the Hong Kong account . . . that were sent to Petitioner were derived from lawful means.  The current evidence of record thus fails to show that the funds invested—directly and indirectly—were obtained through lawful means.

J.A. at 307.

Ms. Sun then filed suit in this Court, alleging that USCIS's decision to deny her EB-5 petition based on her failure to show how Ms. Pong obtained U.S. dollars was "not in accordance with law" and should be set aside under the Administrative Procedure Act ("APA").  *See* Compl., ECF No. 1, ¶ 46; 5 U.S.C. § 706(2)(A).  The parties have now filed cross-motions for summary judgment.  *See* Pl.'s Mot., ECF No. 11; Defs.' Mot., ECF No. 10; Pl.'s Opp'n, ECF No. 12; Defs.' Opp'n, ECF No. 13.  These motions are now ripe for decision.

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  However, "when a party seeks review of

agency action under the APA [before a district court], the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson,* 269 F.3d 1077, 1083 (D.C. Cir. 2001). Accordingly, "the standard set forth in Rule 56[] does not apply because of the limited role of a court in reviewing the administrative record . . . . Summary judgment is . . . the mechanism for deciding whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Southeast Conference v. Vilsack*, 684 F. Supp. 2d 135, 142 (D.D.C. 2010) (JDB).

The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *FCC v. Fox Television Stations, Inc.,* 556 U.S. 502, 513 (2009). It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "This is a 'narrow' standard of review as courts defer to the agency's expertise." *Ctr. for Food Safety v. Salazar*, 898 F. Supp. 2d 130, 138 (D.D.C. 2012) (JEB) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)). However, an agency must "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (internal quotation omitted). "Moreover, an agency cannot 'fail[ ] to consider an important aspect of the problem' or 'offer[ ] an explanation for its decision that runs counter to the evidence' before it." *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 57 (D.C. Cir. 2015) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).

### III. ANALYSIS

This case presents a question that has arisen in multiple recent cases in this District: When an EB-5 visa petition shows that the petitioner has exchanged assets with or obtained a loan from a third-party intermediary before investing in the United States, may USCIS deny the petition

based solely on the petitioner's failure to show how the intermediary obtained the assets used in the exchange or loan? *See Battineni v. Mayorkas*, 752 F. Supp. 3d 195, 214–17 (D.D.C. 2024) (PLF); *Zhou v. Noem*, No. 19-cv-2650, 2025 WL 416152, at \*5–10 (D.D.C. Feb. 6, 2025) (TJK). This Court joins others in this District in holding that the answer to that question is "no." *See Battineni*, 752 F. Supp. 3d at 216; *Zhou*, 2025 WL 416152, at \*10.

In this case, USCIS's decision to deny Ms. Sun's EB-5 visa petition rested on Ms. Sun's failure to show the source of an intermediary's assets. But the source of an intermediary's assets is not at issue in an EB-5 proceeding. What may be at issue is whether the EB-5 *petitioner* lawfully obtained assets *from the intermediary* before using them to make a qualifying investment.

Here, unlike in many similar cases, there is no dispute that the petitioner's original source of capital was lawful: Ms. Sun submitted evidence showing that she obtained renminbi by selling real property in China that she had purchased ten years earlier using her employment earnings, and USCIS appears to have credited that evidence. *See* J.A. at 20, 147. The only dispute in this case is whether the U.S. dollars that Ms. Sun later obtained through a currency swap for her renminbi were "obtained through lawful means." *See* 8 C.F.R. § 204.6(e), (j)(3).

Because USCIS's decision to deny Ms. Sun's visa petition focused on the source of an intermediary's assets rather than on whether it was lawful for Ms. Sun to obtain those assets through a currency swap, the Court shall grant Ms. Sun's motion for summary judgment, deny USCIS's motion for summary judgment, and remand this matter to the agency for reconsideration or other further proceedings consistent with this Memorandum Opinion.

A. **USCIS's Stated Reason for Denying Sun's Visa Application Does Not Accord with the Governing Statute, Regulations, and Precedent.**

1. <u>Requiring an EB-5 petitioner to show the source of an intermediary's funds is inconsistent with the governing statute, regulations, and administrative precedents.</u>

The implementing regulations for the EB-5 visa program provide that a visa petitioner must offer evidence that the "capital" used in the petitioner's qualifying investment belonged to the petitioner and was "obtained through lawful means." *See* 8 C.F.R. § 204.6(e), (j)(3). And the regulations, like the underlying statute, provide that "capital" does not include assets that were "acquired," "directly or indirectly," by "unlawful means." *Id.* § 204.6(e); 8 U.S.C. § 1153(b)(5)(D)(ii). The parties disagree about whether a petitioner who exchanges assets with an intermediary can satisfy these requirements without documentary evidence showing the source of the intermediary's assets. *Compare* Defs.' Mot. at 9–10, *with* Pl.'s Mot. at 18–19.

Binding administrative precedent directs the USCIS to require documentary evidence of the "path of the funds" that an EB-5 petitioner is investing in a qualifying enterprise. *See Izummi*, 22 I. & N. Dec. at 195; *accord Sadeghzadeh v. USCIS*, 322 F. Supp. 3d 12, 17 (D.D.C. 2018) (APM) (concluding that the *Izummi* decision requires an EB-5 petitioner to "document the complete path of her investment funds"); *Borushevskyi v. USCIS*, 664 F. Supp. 3d 117, 129 (D.D.C. 2023) (EGS) (acknowledging that "the authoritative agency position" is that the petitioner must introduce evidence showing the "complete path" of the petitioner's funds), *aff'd*, No. 23-5116, 2024 WL 2762146 (D.C. Cir. May 30, 2024).

The Defendants argue that requiring a petitioner to show the source of an intermediary's assets is consistent with this longstanding precedent, but this Court is not persuaded. *See* Defs.' Mot. at 11–12. Although the relevant regulations require evidence of the source and ownership of the petitioner's capital, neither DHS's administrative precedents nor the underlying regulations

require or authorize USCIS to demand evidence tracing the source of the petitioner's capital beyond their lawful source *to the petitioner*. *See Izummi*, 22 I. & N. Dec. at 195; 8 C.F.R. § 204.6(e), (j)(3).

As at least two courts in this District have now recognized, the relevant regulations authorize USCIS to require evidence showing the "path of the funds" that an EB-5 petitioner invests in the United States to prove two propositions: (1) that the invested capital in fact belonged to the petitioner, and (2) that the petitioner obtained her capital from a lawful source. *See Battineni*, 752 F. Supp. 3d at 209–14; *Zhou*, 2025 WL 416152, at \*5–10.

The administrative precedent on which the Defendants principally rely, *Matter of Izummi*, illustrates how evidence tracing the "path of the funds" can be probative of whether the investor owned the capital at issue. *See* 22 I. & N. Dec. at 195. In that case, an EB-5 visa petitioner had submitted to the agency a letter from his bank "acknowledging the receipt of $120,000" and informing him that the bank had deposited the funds into a "custody account." *Id.* However, the record on appeal before the Board of Immigration Appeals ("BIA") did not "reveal from where these funds originated," and the BIA concluded that it was "not known if the money came from the petitioner's overseas accounts, from his U.S. accounts, or from some other source." *Id.* Under the circumstances, the BIA determined that the petitioner had "failed to meet his burden of establishing that the initial $120,000 were his own funds." *Id.* Explaining its decision, the BIA noted that the petitioner "ha[d] not documented the path of the funds, such as by wire-transfer records." *Id.* It also noted that the petitioner had "failed to document the source of the hundreds of thousands of dollars in his bank accounts," noting that he was only 30 years old and had a relatively short employment history. *Id.* Under these circumstances, evidence tracing the "path of the funds" into the petitioner's accounts would have resolved an important uncertainty about

whether the funds that the petitioner was investing to qualify for an EB-5 visa were "his own funds." *See id.*

Evidence showing the "path of the funds" can also be probative of whether the petitioner obtained her capital from a lawful source. For example, in *Matter of Soffici*, 22 I. & N. Dec. 158 (BIA Assoc. Comm'r 1998), the BIA denied a visa application in part because the petitioner had not introduced evidence documenting the sale of a house and a business that he asserted were the source of his funds. *Id.* at 164–65. The BIA explained that "[s]uch documentation is relevant to the question of whether the funds have been lawfully obtained, which is a requirement under 8 C.F.R. § 204.6(j)(3)." *Id.* Under these circumstances, evidence tracing the "path of the funds" to the petitioner—for example, showing that the petitioner was the lawful owner of the house and business and had sold each of them in lawful transactions—would have been directly relevant to whether the petitioner had obtained that capital "through lawful means." *See id.*; 8 C.F.R. 204.6(j)(3).

Each of the judicial decisions that the Defendants cite affirming the denial of an EB-5 visa for lack of evidence of the "path of the funds" appears to have rested its reasoning on the agency's need for evidence showing either that the petitioner owned the investment capital or that the petitioner obtained that capital lawfully.[6] But in this case, by contrast, there is no dispute that

---

[6] *See Van Nu Tu Truong v. USCIS*, No. 21-cv-316, 2023 WL 4234658, at *7 (D.D.C. June 28, 2023) (RC) (noting the agency's conclusion that the petitioner had "provided inadequate documentation showing 'whether the funds transferred to the U.S. business were even owned by [her] at all'" (alteration in original)); *Borushevskyi*, 664 F. Supp. 3d at 135, 141–42 (adopting report and recommendation noting that the petitioner had not introduced sufficient evidence to prove his own source of funds); *Sadeghzadeh*, 322 F. Supp. 3d at 18 (noting that the petitioner had used wiring companies to transfer her funds but had not produced records of the transfer to prove ownership of the funds); *Kara v. USCIS*, No. 20-cv-20611, 2020 WL 7711661, at *3–4 (S.D. Fla. Dec. 29, 2020) (noting that the petitioner had failed to trace her funds to any lawful source); *Jian Zhang v. Nielsen*, No. 18-cv-9799, 2019 WL 5303276, at *7–8 (C.D. Cal. Oct. 17, 2019) (noting that the petitioner had failed to trace his funds to lawful sources to account for his accumulation of wealth); *Binbin Lei v. USCIS*, No. 15-cv-9654, 2017 WL 5957641, at *4–5 (C.D. Cal. March 23, 2017) (noting that the petitioner had failed to trace the path of her funds to show that they were her own funds); *Tocara Invs. v. Johnson*, No. 15-cv-00787, 2017 WL 985644, at *4 & n.32 (D. Nev. Mar. 14, 2017) (noting that the petitioner had failed to show that his funds came from a lawful source); *Kim v. Baran*, No. 13-cv-1752, 2014 WL 12573361, at *4–5 (C.D. Cal. August 13, 2014) (noting that the petitioner had failed to show that his funds came from a lawful

Ms. Sun lawfully owned the original source of her capital: she submitted evidence showing that she obtained renminbi by selling real property in China that she had purchased ten years earlier using her employment earnings, and USCIS appears to have credited that evidence.  *See* J.A. at 20, 147.   The only dispute in this case is whether the U.S. dollars that Ms. Sun later obtained through a currency swap for her renminbi were "obtained through lawful means."  *See* 8 C.F.R. § 204.6(e), (j)(3).  And none of the judicial decisions that the Defendants have cited affirmed a denial of a visa for failure to trace funds beyond their source *to the petitioner*, which is what the USCIS insisted was required in this case.[7]

A requirement for evidence tracing the "path of the funds" beyond the petitioner's own source of capital would be contrary to Congress's intent in establishing the program.  The legislative history shows that Congress intended the EB-5 program's lawful-source requirement to apply to the *petitioner's* source of capital, not the sources of capital of third-party intermediaries with whom the petitioner completed otherwise-lawful transactions.  For example, the relevant portion of the Senate Judiciary Committee Report on the bill that eventually authorized the program states that it was the Committee's intention "that  processing of an individual visa not continue under this section if it becomes known to the Government that the money invested was obtained *by the alien* through other than legal means (such as money received through the sale of illegal drugs).'"  S. Rep. No. 101–55, at 21 (1989) (emphasis added).  The statement accompanying the implementing regulations quotes this language, explaining that the regulatory requirement for

source); *Spencer Enters., Inc. v. United States*, 229 F. Supp. 2d 1025, 1039–40 (E.D. Cal. 2001) (noting that the petitioner had not traced the path of her funds sufficiently to establish that the funds came from her and were lawfully acquired), *aff'd*, 345 F.3d 683 (9th Cir. 2003).

[7] The Defendants have identified one unpublished administrative decision affirming such a denial, but that decision is not entitled to any precedential weight, either within the agency or before this court.  *See Matter of [Redacted]*, 2014 WL 4113942, at *8 (AAO May 29, 2014); *cf.* 8 C.F.R. § 1003.1(g), (i) (establishing process for designating administrative decisions as precedents binding upon the agency).

evidence showing the source of the petitioner's funds was intended to "carr[y] out" this "instruction." 56 Fed. Reg. 60897, 60904 (Nov. 29, 1991).

The Defendants argue that their contrary position—that the EB-5 regulations require evidence tracing the path of the petitioner's funds beyond their source *to the petitioner*—is entitled to deference because it reflects the USCIS's reasonable interpretation of an ambiguous regulation. *See* Defs.' Mot. at 19–21 (citing *Kisor v. Wilkie*, 588 U.S. 558, 576–79 (2019), and *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). However, to receive deference, an agency's interpretation of its regulation must fall within the "zone of ambiguity" that remains after the court has "employ[ed] all its interpretive tools." *Kisor*, 588 U.S. at 576. The interpretation that the Defendants advance in this case falls short of that standard.[8]

As discussed above, the regulation requiring petitioners to submit evidence showing that their capital was "obtained through lawful means" was enacted in direct response to the Senate Judiciary Committee's stated intention to exclude funds "obtained *by the alien* through other than legal means." *See* 8 C.F.R. § 204.6(e); S. Rep. No. 101–55, at 21 (1989) (emphasis added). Understood in that context, a requirement that a petitioner submit evidence of a third party's source of funds is not a "reasonable interpretation" within the "zone of ambiguity" in the regulation's reference to evidence that capital was "obtained through lawful means." *See Kisor*, 588 U.S. at 576; 8 C.F.R. § 204.6(e).

Because USCIS's interpretation of the regulations at issue is not a reasonable resolution of any genuine ambiguity that remains after the Court has "resorted to all the standard tools of

---

[8] The Court does not revisit or question here the agency's longstanding interpretation requiring evidence showing the complete "path of the funds" from the petitioner's own lawful sources of capital to the petitioner's qualifying investment in the United States. *See Matter of Izummi*, 22 I. & N. Dec. at 195. Courts in this District have affirmed that narrower interpretation as reasonable and entitled to deference. *See, e.g.*, *Borushevskyi*, 664 F. Supp. 3d at 130; *Van Nu Tu Truong*, 2023 WL 4234658, at *5.

interpretation," that interpretation is entitled to deference only "to the extent it has the 'power to persuade.'" *Kisor v. Wilkie*, 588 U.S. 558, 573 (2019) (indirectly quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).  Here, the agency's interpretation is not persuasive.  Although the Court gives all due weight to the agency's substantive expertise in administering the EB-5 program and the immigration laws in general, the agency has not persuasively explained how that expertise informs its judgment that the EB-5 regulations require proof of third parties' sources of funds. And while the Defendants represent that the agency is "simply trying to protect the legitimacy of the EB-5 program," they have not explained why proof of third parties' sources of funds—rather than, for example, a direct inquiry in the legality of the *petitioner's* transactions with third parties— is necessary to achieve that objective.  *See* Defs.' Mot. at 13.  The Court therefore declines to defer to USCIS's interpretation of the regulations at issue.

      2.      <u>USCIS's stated reason for denying Ms. Sun's petition lacks support in law, and no alternative grounds support its decision.</u>

Having concluded that the relevant legal standards do not authorize or require USCIS to deny an EB-5 petition based solely on the petitioner's failure to document an intermediary's source of funds, the Court must decide whether USCIS's denial of Ms. Sun's petition in fact rested on that ground, and if it did, whether alternative grounds can support its decision.  *See BDPCS, Inc. v. FCC.*, 351 F.3d 1177, 1183 (D.C. Cir. 2003) ("When an agency offers multiple grounds for a decision, [courts in this Circuit] will affirm the agency so long as any one of the grounds is valid, unless it is demonstrated that the agency would not have acted on that basis if the alternative grounds were unavailable.").

Here, the record shows that USCIS's sole stated reason for denying Ms. Sun's petition was her failure to provide evidence showing the source of funds to her intermediary, Ms. Pong.  *See* J.A. at 302–07.  The agency explained in its decision that it had concluded that Ms. Sun had not

carried her burden of proof "because" she had failed to show that her "Exchanger's funds"—that is, Ms. Pong's U.S. dollars—"were derived from lawful means." *Id.* at 307. Although there may have been other valid bases for the agency's decision, the Court must evaluate the agency's decision based on its stated reasons. *See Dep't of Com. v. New York*, 588 U.S. 752, 780 (2019) ("[I]n reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record."); *In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 156 F.3d 1279, 1279 (D.C. Cir. 1998) ("[T]he reasonableness of the agency's action is judged in accordance with its stated reasons."). No other reasons appear in the agency's decision. *See* J.A. at 302–07.

USCIS's decision to deny Ms. Sun's EB-5 visa petition therefore rested solely on a ground that does not accord with the governing statute, regulations, and administrative precedents, and that decision must be set aside. *See* 5 U.S.C. 706(2)(A).

**B.  The Proper Remedy is a Remand to USCIS.**

Finally, having decided to set aside the agency's denial of Ms. Sun's visa petition, the Court must decide whether to order the agency to approve the petition or to remand the matter to the agency for reconsideration or other appropriate proceedings. *See* Pl.'s Mot. at 23 (proposing both remedies). In this case, as in most similar cases, the proper remedy is a remand to the agency.

When the record before the agency does not support the agency's action, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *Erwin v. Fed. Aviation Admin.*, 23 F.4th 999, 1007 (D.C. Cir. 2022). The presumption in favor of remand to the agency rather than *de novo* determination in district court is especially apt "'in the field of immigration,' where 'there may be sensitive issues lurking that are beyond the ken of the court.'" *Huashan*

16

*Zhang v. USCIS*, 344 F. Supp. 3d 32, 60 (D.D.C. 2018) (EGS) (quoting *Fox v. Clinton*, 684 F.3d 67, 80 (D.C. Cir. 2012)), *aff'd*, 978 F.3d 1314 (D.C. Cir. 2020).

Accordingly, the Court shall vacate USCIS's decision denying Ms. Sun's EB-5 visa petition and remand this matter for reconsideration or any other further proceedings consistent with this Memorandum Opinion. *See Erwin*, 23 F.4th at 1007 (remanding to allow the agency to consider relevant evidence and "make explicit the 'why and wherefore' of its action"); *see also Biden v. Texas*, 597 U.S. 785, 808 (2022) (explaining that, on remand, an agency may elect to start "afresh" by taking a new action, unencumbered by its prior reasoning).

On remand, USCIS may consider other issues relevant to Ms. Sun's eligibility for an EB-5 visa, including whether Ms. Sun lawfully obtained her U.S. dollars from Ms. Pong. USCIS previously raised this issue in its request for evidence from Ms. Sun, noting that the record before it was "silent as to whether" the kind of "currency swap" that Ms. Pong performed for Ms. Sun "is lawful under Chinese law in mainland China (e.g., such as the rules of the State Administration of Foreign Exchange)." J.A. at 230. If USCIS concludes on remand that the legality of this kind of currency swap under Chinese law is relevant to whether the U.S. dollars that Ms. Sun invested were "capital obtained through lawful means," it is free to require her to produce evidence relevant to that issue. *See* 8 C.F.R. § 204.6(j)(3).

\*      \*      \*

17

**IV. CONCLUSION**

For the foregoing reasons, the Court shall **GRANT** the Plaintiff's [11] Motion for Summary Judgment, **DENY** the Defendants' [10] Motion for Summary Judgment, **VACATE** USCIS's decision denying the Plaintiff's EB-5 visa petition, and **REMAND** this matter to USCIS for reconsideration or any other further proceedings consistent with this Memorandum Opinion.

An appropriate Order accompanies this Memorandum Opinion.


**Dated:**  March 28, 2025

COLLEEN KOLLAR-KOTELLY
United States District Judge